1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

ELVIRA GONZALEZ, et al.,          :

            15-CV-6818(CBA)

      Plaintiffs,          :

    -against-          :          United States Courthouse
                  Brooklyn, New York
UBER TECHNOLOGIES, INC.,          :

                  May 6, 2016
    Defendant.          :          3:00 o'clock p.m.

- - - - - - - - - - - - X


TRANSCRIPT OF PRE-MOTION CONFERENCE
BEFORE THE HONORABLE CAROL BAGLEY AMON
UNITED STATES DISTRICT JUDGE.


APPEARANCES:


For the Plaintiff:          SIMMONS HANLY CONROY LLC
                  112 Madison Ave, 7th Floor
                  New York, NY 10016

                  BY: ANDREA BIERSTEIN, ESQ.


For the Defendant:          MORRISON & FOERSTER LLP
                  250 West 55th Street
                  New York, NY 10019

                  BY: DAVID J. FIOCCOLA, ESQ.
                      ADAM HUNT, ESQ.
                      TIFFANI B. FIGUEROA, ESQ.


Court Reporter:          Charleane M. Heading
                  225 Cadman Plaza East
                  Brooklyn, New York
                  (718) 613-2643

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

2

1          THE CLERK:  Gonzalez versus Uber Technologies,

2     CV15-6818, on for a pre-motion conference.

3          THE COURT:  Counsel, state your appearances, please.

4          MS. BIERSTEIN:  Good afternoon, Your Honor.  Andrea

5     Bierstein from Simmons Hanly Conroy for the plaintiffs and

6     Your Honor will note we've substituted the plaintiff Judith

7     Ferrenbach for the original plaintiff Elvira Gonzalez.

8          THE COURT:  All right.

9          MR. FIOCCOLA:  Good afternoon.  David Fioccola from

10    Morrison Foerster on behalf of the defendant Uber

11    Technologies.

12         THE COURT:  Good afternoon.

13         MR. HUNT:  Good afternoon.  Adam Hunt also from

14    Morrison & Foerster.

15         MS. FIGUEROA:  Tiffani Figueroa also on behalf of

16    Uber Technologies.

17         THE COURT:  The defendants want to make a motion to

18    dismiss with the new plaintiff as well.  One concern I believe

19    that they have is the class allegations, because you have in

20    the complaint a class of cell phone holders who have these

21    calls but she apparently was not a cellphone.

22         MS. BIERSTEIN:  Your Honor, the class that was

23    pleaded in the original complaint was not specifically cell

24    phones.  The classes pleaded in the complaint was just

25    everybody in New York who had received the calls and we had

3

1    thought that by the time we moved for class cert, that might

2    or might not be narrowed in some appropriate way depending on

3    how various rulings went, but the class as it was described

4    hasn't changed because the class did not refer to cell phones,

5    I don't believe.  The class was always defined more broadly as

6    an initial matter in the complaint.

7            As I said, Your Honor, I think what discovery would

8    support for the class, we would determine that before we moved

9    for class cert.

10           THE COURT:  So your class is defined in the

11   complaint as simply everybody who got the phone call?

12           MS. BIERSTEIN:  Everybody within the -- yes,

13   everybody in New York who got the phone call, that's correct.

14           THE COURT:  Well, would that include individuals who

15   received a phone call at their business addresses, business

16   phones?

17           MS. BIERSTEIN:  Well, I think, as drafted -- I have

18   to look, Your Honor.  I apologize.  I don't have the complaint

19   in front of me.  It might be that we would need to narrow that

20   for purposes of the class certification motion.

21           I think on the motion to dismiss, the only facts

22   that would be before the Court are obviously Ms. Ferrenbach's

23   facts.  I should note, Your Honor, that a cell phone user,

24   there wouldn't be any problem with Ms. Ferrenbach being a

25   class representative for cell phone users because the case

4

1    moving cell phones -- putting aside the arbitration issue that

2    Mr. Fioccola raised which does not arise from being a cell

3    phone, it arises from being an Uber subscriber.

4              So, if you had a cell phone recipient who was not an

5    Uber subscriber, Uber would have fewer defenses against such a

6    person than they would have against Ms. Ferrenbach which means

7    if the complaint survived the motion to dismiss on a

8    residential landline, there would be no impediment to include

9    cell phone users because their claim isn't *a fortiori* there.

10             So, I think it's one of the reasons that this

11   question of exactly who should be in the complaint, who should

12   be in the class is much better dealt with at least after the

13   motion to dismiss and potentially after discovery and there

14   may need to be some narrowing of what the scope of the

15   discovery is, but I think we need to get a handle on, on the

16   motion to dismiss as to whether Ms. Ferrenbach's claims

17   survive before we can decide who she can be a class

18   representative for.

19             MR. FIOCCOLA:  Your Honor, if I may.

20             THE COURT:  Yes.  What are the grounds?  Why don't

21   you articulate the grounds on which you wish to dismiss the

22   complaint now.

23             MR. FIOCCOLA:  Sure.  And, Your Honor, to be clear,

24   we believe, in the first instance, this case should be stayed

25   and then, if the Court wanted to proceed --

5

1          THE COURT:  Stayed, you mean even motion practice

2     stayed?

3          MR. FIOCCOLA:  Yes, for two reasons.

4          This case originally was filed as a cell phone case.

5     The plaintiff that they originally had, Ms. Gonzalez, had

6     claimed that she had received a political phone call to her

7     cell phone and then they got filed.  Magistrate Judge Pollak

8     had ordered them to give us the cell phone number they claim

9     that was called because they wouldn't provide that to us

10    pre-discovery, and on the day that Magistrate Judge Pollak had

11    ordered them to disclose that phone number to us, plaintiff

12    said that their plaintiff didn't want to proceed.  We had

13    always maintained that that plaintiff wasn't called.

14         THE COURT:  Was what?

15         MR. FIOCCOLA:  We had always maintained that that

16    plaintiff was never called.  We had never called an individual

17    by Ms. Gonzalez's name.

18         THE COURT:  Oh, all right.

19         MR. FIOCCOLA:  They had then substituted -- they had

20    then substituted with Ms. Ferrenbach.  Once they had done

21    that, we had done a simple Google search on the phone number

22    they had given to us and found that Ms. Ferrenbach was holding

23    that same phone number out as her business line for a tutoring

24    service she runs here in Brooklyn.  It also turned out that it

25    was a residential line, though it's a cell phone that they

6

1   were claiming was called.  And so, in essence, they had

2   done --

3           THE COURT:  Well, the complaint doesn't -- is the

4   complaint narrowed to cell phones?

5           MR. FIOCCOLA:  Yes.  The class definition is all

6   persons in New York City who received calls placed by Uber in

7   or around July 2015 on their residential landline and/or

8   personal mobile phones urging them to contact their Council

9   representative or otherwise referencing proposals to restrict

10  the growth in the number of for-hired vehicles in New York

11  City.  That's paragraph 41.

12          So what they had done, in essence, is filed the same

13  complaint that Mr. Bank had filed against Uber, same case

14  because it's the same claims, landline telephones, same

15  theories of liability.  That case, Judge Gleeson had dismissed

16  it and it's now on appeal before the Second Circuit.

17          THE COURT:  What is the status of the appeal?

18          MR. FIOCCOLA:  The opening brief has been filed.

19  The opposition brief is due on June 9th and I forget when the

20  reply is due but I think within 30 days after that.

21          THE COURT:  You represent Uber in that case?

22          MR. FIOCCOLA:  We do.  We do.  And the issues at

23  stake in that case are exactly the same issues here with

24  respect to the TCPA and the 399-p claim.

25          I had also, in addition to this being Bank part two,

1  there's also an issue with respect to this business

2  residential phone line.

3           In another case filed by Mr. Bank who is responsible

4  for a large amount of TCPA law, he had sued a company called

5  Independent Energies.  Independent Energies through some

6  discovery had uncovered that the phone number that Mr. Bank

7  was claiming was called is the phone number he holds out for

8  his law practice.  They had then moved I think it was for

9  summary judgment before Judge Gleeson.  Judge Gleeson had

10 gotten all of Todd Bank's claims whenever they were filed in

11 the Eastern District, and had ruled against Todd Bank finding

12 that holding that number out as your business line doesn't

13 qualify for a residential line under the TCPA.

14          So that was another basis for, for moving to dismiss

15 this case.  Now --

16          THE COURT:  What happened with that case?

17          MR. FIOCCOLA:  Great question.  I was going to get

18 to that, Your Honor.  That case is also on appeal before the

19 Second Circuit.

20          THE COURT:  One of Mr. Bank's cases was remanded.

21 It probably wasn't --

22          MR. FIOCCOLA:  It was not that case.  The FCC -- so,

23 at the same time, Mr. Bank had filed a petition with the FCC

24 to get some guidance on this distinction between residential

25 and business while that Independent Energies appeal is

8

1    pending.  The FCC said that they were actually going to do

2    that and the Second Circuit asked the FCC to submit an amicus

3    brief in that case which they did and the FCC urged the Second

4    Circuit to stay the appeal pending the FCC's ruling on

5    Mr. Bank's petition.  Comments from Mr. Bank's petition on

6    this issue were just completed about a week ago, within the

7    last week.

8            So, all of those issues, Your Honor, my point is,

9    are still in flux that directly impact, directly impact this

10   case including the fact that Ms. Ferrenbach is actually a

11   putative class member of Mr. Bank's case.  So, if the Second

12   Circuit were to find that the TCPA claim cannot go forward or

13   the 399-p claim can't go forward, it would be binding on

14   Ms. Ferrenbach.

15           So, our view is on the first instance, instead of

16   wasting the Court's time and parties' time and resources, we

17   should just wait until those issues resolve themselves either

18   through the FCC but probably more importantly, through the

19   Second Circuit to see what the Second Circuit does on

20   Mr. Bank's appeal.  It's not a case of ongoing harm to

21   Ms. Ferrenbach.  She's not prejudiced by any kind of delay and

22   the Court can easily stay a case or close it administratively

23   without prejudice to Ms. Ferrenbach opening the case once the

24   Second Circuit rules.  So, that's our initial position.

25           Our second position, Judge, is that we do have to

9

1  file the motion to dismiss.  We make the argument that this,

2  she held out this was a business line and it doesn't qualify

3  for residential --

4          THE COURT:  Is that what the FCC is determining,

5  whether a business line is subject --

6          MR. FIOCCOLA:  What is the test for that, that's

7  exactly right.  There's a bright line test, are there factors

8  you consider, how is that determined.  Judge --

9          THE COURT:  But it is clear that a business line is

10  not covered; it is just what constitutes a business line, the

11  definition of that is being considered.

12          MR. FIOCCOLA:  Right, or more to the language of the

13  statute, what is the definition of residential.

14          THE COURT:  Okay.

15          MR. FIOCCOLA:  Right.  So that would be one issue.

16          The other issue is that this is a political phone

17  call that's exempt under the TCPA.  That's the issue that

18  Judge Gleeson --

19          THE COURT:  Judge Gleeson had --

20          MR. FIOCCOLA:  -- judge Gleeson had decided and then

21  there are several arguments on 399-p, probably the most

22  significant which Judge Gleeson had decided on, his denial of

23  Mr. Bank's motion.

24          THE COURT:  I thought he just declined supplemental

25  jurisdiction.

1          MR. FIOCCOLA:  He did in his original decision.

2    Mr. Bank immediately filed a motion to reconsider and

3    Judge Gleeson had denied that motion to reconsider and in a

4    very short docket entry, Judge Gleeson had said there was no

5    need for him to revisit that decision because he found that

6    399-p, Section 9, which says one can only bring a 399-p claim

7    in his or her, quote, own name, means that it cannot proceed

8    as a class action, only as an individual claim.  So, the judge

9    had authority to decide the issue of whether or not there was

10   supplemental jurisdiction because CAFA jurisdiction does not

11   apply.  That issue is also on appeal before the Second

12   Circuit.

13          THE COURT:  Oh, I see.  So, he viewed it as a single

14   claim which he could decline supplemental jurisdiction over if

15   he didn't find --

16          MR. FIOCCOLA:  -- that the CAFA applied.

17          THE COURT:  The CAFA applied.

18          MR. FIOCCOLA:  That's right.

19          THE COURT:  And that was appealed as well?

20          MR. FIOCCOLA:  Yes.

21          THE COURT:  Okay.  All right.

22          MR. FIOCCOLA:  And so our position is for all of

23   those reasons, we should put this case on hold until those

24   issues are sorted out.  If Your Honor didn't want us to go

25   forward, we would want to move forward with the motion to

11

1    dismiss.  I think part of the motion to dismiss would also

2    include a motion to strike the cell phone class allegations

3    because there's different liability.  If there was a call to a

4    cell phone versus a call to a residential line, especially

5    when it comes to the TCPA, those theories of liability are

6    different and this plaintiff can't really stand in the

7    shoes --

8                THE COURT:  What is the difference?

9                MR. FIOCCOLA:  The political exemption doesn't apply

10   to calls to cell phones.  So this plaintiff wouldn't actually

11   have standing to represent those plaintiffs who may --

12               THE COURT:  I'm sorry.  The political what?

13               MR. FIOCCOLA:  The political exemption under the

14   TCPA which says if it's a, quote, political call, it's exempt

15   from the TCPA requirements and Judge Gleeson found that that,

16   the phone call at issue in <u>Bank</u> which is the same phone call

17   at issue in this case qualified under that political

18   exemption.

19               THE COURT:  But you don't get that exemption for a

20   cell phone?

21               MR. FIOCCOLA:  For a cell phone call, that's right.

22   It only applies to a residential call.  So my view is if this

23   plaintiff only has a residential call at issue and this court

24   finds that that residential call fits within the political

25   exemption, this plaintiff has, is factually dissimilar from

12

1    the cell phone class and also does not have standing to

2    represent the cell phone class.

3            Lastly, I would add that cell phones were not part

4    of this call campaign.  They were scrubbed.  And if you

5    remember, Your Honor, the first plaintiff they had who claimed

6    it was a cell phone withdrew her claim and I submit to the

7    Court that the reason that they did that was because, at least

8    from Uber's perspective, we never called that cell phone.

9            THE COURT:  Okay.

10           MS. BIERSTEIN:  Your Honor, might I respond?

11           THE COURT:  Yes, but let me just ask you the

12   practical question.

13           This very issue that would be dispositive of

14   plaintiff's claim here is already before the Court of Appeals

15   so instead of everyone including yourself going to the time

16   and expense of answering these motions, why don't we just

17   await the decision of the Second Circuit?

18           MS. BIERSTEIN:  Well, Your Honor, there are several

19   reasons and that is actually where I was going to start.

20           I want to say, first of all, I think Mr. Fioccola

21   misspoke when he suggested that the Second Circuit ruling

22   would be binding because he said Ms. Ferrenbach would be a

23   member of Mr. Bank's class.  As the Court, I'm sure, is aware,

24   there is no certified class in the <u>Bank</u> case.  In fact, it's

25   unlikely there could ever be a certified class there because

13

1   Judge Gleeson has previously found Mr. Bank to be an

2   unsuitable class plaintiff.  I would imagine he would also be

3   unsuitable class counsel, but in any case, in the absence of a

4   certified class, the ruling is binding only on Mr. Banks.  So

5   I just --

6           THE COURT:  Well, Judge Gleeson's ruling would be

7   binding only on Mr. Banks, but were the Second Circuit to

8   decide this issue, this court in its decision would be

9   governed by that decision.

10          MS. BIERSTEIN:  That's true, Your Honor.  It's not

11  because Ms. Ferrenbach is a member of --

12          THE COURT:  All right.  I understand your point.

13          MS. BIERSTEIN:  But let me proceed because I think

14  it gets to my next point which are the important differences

15  here in terms of, first of all, on the issue of the

16  residential line.  The facts of the case are sufficiently

17  different that depending on what the Second Circuit order

18  ruled the test was.  They might or might not apply to

19  Ms. Ferrenbach.  Judge Gleeson had the benefit of discovery

20  from the previous case in terms of Mr. Bank's use of his phone

21  number for his law practice.  All of the --

22          THE COURT:  I didn't think that that decision turned

23  on the residential business distinction.  I thought it turned

24  on the political question.

25          MS. BIERSTEIN:  The Uber decision does but the other

14

1   appeal that Mr. Fioccola is referring to, the residential line

2   issue, does turn on discovery about that, that is, in the --

3           THE COURT:  All right.  But the political call would

4   be dispositive of this case if they upheld what Judge Gleeson

5   said, correct?

6           MS. BIERSTEIN:  Your Honor, again, I think I have

7   two answers to that.  Before I talk about political call, I

8   want to talk about 399-p because I think the 399-p claim is as

9   important here as the TCPA claim and it keeps kind of getting

10  lost in the shuffle.  It is true that Judge Gleeson -- because

11  the political call issue is no defense to 399-p.  It would

12  have no effect on the 399-p claim.

13          Judge Gleeson has a docket text entry in which he

14  suggests that you can't bring a class action under 399-p and

15  Mr. Fioccola suggests we should be waiting for Second Circuit

16  guidance on that.  The problem with that, Your Honor, is that

17  the precise language of 399-p, the structure and the language

18  of the statute that authorizes the Attorney General to sue in

19  the name of the people of the State of New York and then

20  authorizes, in addition, an individual to sue in his own name,

21  that's the exact same language in GBL 349.

22          Now, on 349, we have many, many, many court

23  decisions construing that language including the United States

24  Supreme Court, including the First Department, including the

25  Second Department.  We have numerous cases in the New York

15

1  Court of Appeals.  Everybody agrees that that statute

2  authorizes a class action.  The identical language in the

3  identical structure appears in 399-p.

4        The notion that we need to wait for the Second

5  Circuit to tell us if you can bring a class action with that

6  language seems problematic in light of the fact that the

7  Supreme Court's already looked at that language and the First

8  Department has looked at that language and the Second

9  Department has looked at it.

10        THE COURT:  Well, that's still your determination

11  that Judge Gleeson was wrong.  You don't have a 349 claim in

12  your complaint.

13        MS. BIERSTEIN:  We do not have the 349 claim, Your

14  Honor.

15        THE COURT:  You're just saying that it's patently

16  obvious that Judge Gleeson was wrong about that.

17        MS. BIERSTEIN:  It's patently obvious that the 349

18  parallel was not pointed out to Judge Gleeson who doesn't

19  refer to it.  He did not issue an opinion.  It's a docket text

20  entry.

21        THE COURT:  But in any way you look at it, the

22  Second Circuit will decide that issue.  What is the rush here

23  if those very issues that govern this case are before the

24  Second Circuit?

25        MS. BIERSTEIN:  Your Honor, I think the rush is that

1    when it comes time to take discovery, the older the case is,

2    people don't remember things, the records aren't always there,

3    it's all the reasons that we don't usually stay cases just

4    because the law may change while that's going on.

5            For example, coming back on the political call

6    issue, the FCC has suggested that this, whether it's

7    commercial or sales call versus political call may depend on

8    things like the intent of the caller rather than simply

9    looking at the text of the message.  That's going to depend on

10   discovery and so --

11           THE COURT:  Who has suggested that it would depend

12   on the intent of the caller?

13           MS. BIERSTEIN:  The FCC in their July 2015 ruling

14   interpreting the TCPA.  So the issue, the way Judge Gleeson

15   looked at it may or may not be what the FCC is now saying, but

16   the point is that when there's a need for discovery to flesh

17   out these issues, the longer it sits --

18           THE COURT:  Well, is the FCC taking into

19   consideration at the moment changing the definition of

20   "political"?  Is that before the FCC?

21           MR. FIOCCOLA:  No.

22           MS. BIERSTEIN:  "Political" is not actually the term

23   in the statute, Your Honor.  The statute talks about sales

24   calls and the issue has been the way the FCC has interpreted

25   it and the way they've interpreted "political."  So it's not a

17

1    question of the statute having a definition of "political."

2         THE COURT:  I understand that.  This other issue is

3    before the FCC.  You don't have any basis to believe that the

4    FCC is somehow going to issue new guidance on, I don't know

5    what the term is, if you say it's not "political."

6         MS. BIERSTEIN:  They have issued the guidance.

7    That's what I'm suggesting, Your Honor, they have issued

8    guidance.

9         THE COURT:  Since Judge Gleeson's decision?

10        MS. BIERSTEIN:  I believe that's -- the July

11   guidance is since --

12        MR. FIOCCOLA:  On political phone calls?

13        MS. BIERSTEIN:  On commercial, yes.

14        MR. FIOCCOLA:  That's a different issue.  I think

15   you're conflating what constitutes just a TCP violation with

16   the political exemption of the TCP.

17        MS. BIERSTEIN:  I think, but I think --

18        MR. FIOCCOLA:  It sounds like what you may be

19   arguing which is similar to what Mr. Bank argued before

20   Judge Gleeson was, judge, you can have a political phone call

21   that has a commercial element and how do you separate the two.

22        MS. BIERSTEIN:  That's a different -- that was not

23   my argument.

24        MR. FIOCCOLA:  And that weighs more on the

25   commercial side.

18

1          MS. BIERSTEIN:  That was not my argument

2   Mr. Fioccola.  I appreciate that but that was not my argument.

3          MR. FIOCCOLA:  But the July 15th declaratory ruling

4   was before Judge Gleeson's decision which was in December of

5   last year.

6          MS. BIERSTEIN:  Then I apologize for that, that it

7   was before that, but I believe that the July 2015 declaratory

8   ruling provides a basis for an argument that the issue of

9   whether something is political or not goes beyond looking at

10  the text and looks at the intent.  Mr. Fioccola is shaking his

11  head no.  That's an argument I would make.

12          I want to come back, I think, Your Honor, that one

13  of the problems is that these issues were not in any way fully

14  explored in the <u>Bank</u> case.  Given Judge Gleeson's summary

15  disposition of these matters in <u>Bank</u>, the likelihood that the

16  Second Circuit will also dispose of them summarily I think is

17  another reason for this court not to stay, particularly if the

18  Second Circuit is going to wait for the FCC which can take

19  years to make determinations.  I don't think that lawsuits are

20  supposed to just sit and freeze while regulatory bodies change

21  their minds about how to interpret something.

22          THE COURT:  I agree with you on the regulatory

23  issue, that could be a long time coming, but it still seems to

24  me that the Circuit already has briefing on this political

25  question which it seems would be dispositive and the 399

19

1    question can just be decided by the Circuit as well.  No one

2    is waiting on any guidance on that.  I understand your point

3    about why that's important to you, but it seems like the

4    Circuit has both of those issues before them.

5            MS. BIERSTEIN:  Your Honor, I don't know what, I

6    don't know what Mr. Bank is briefing in the Circuit given that

7    he apparently didn't bring to Judge Gleeson's attention the

8    parallel with 349.  If this is stayed, I think my client would

9    have to be an amicus or an intervenor in the Second Circuit

10   because there's no evidence that Mr. Bank is protecting

11   anyone's rights or even raising arguments that need to be

12   raised and that's on the suggestion --

13           THE COURT:  Why would that be a more profitable

14   thing for you to do at the moment?  Look at it this way.  Even

15   if I were to agree with some of your arguments and then the

16   Circuit were to come out and decide it differently, then you

17   want the Circuit to decide the issue in your favor with all

18   the full information, not another District Court decision.

19           MS. BIERSTEIN:  The Circuit may well issue a

20   non-precedential ruling is my concern, given the summary

21   ruling particularly on 399 where there was no opinion and the

22   issues with Mr. Bank as a serial litigant.  If the Circuit

23   issues a non-precedential ruling, then this court won't have a

24   binding precedent to follow and I think that in the posture of

25   the Bank case, that is a serious concern, that we may not

1   actually get a precedential ruling, we may get a summary

2   non-precedential disposition, and we'll have been waiting

3   while discovery gets stale for potentially something that says

4   summarily affirmed or gives us three paragraphs and says this

5   is not precedential and then where are we.

6          I mean we are prepared to brief a motion to dismiss

7   now and I understand that Your Honor will not want us to

8   proceed with discovery in the meantime, although, again, I

9   have some concerns about the discovery getting stale, but at

10  least if we brief the motion to dismiss, we could be moving

11  along in case the Circuit doesn't give us precedential

12  guidelines.

13         MR. FIOCCOLA:  Your Honor, I don't even know what

14  discovery getting stale in this context means.  This is not an

15  eye witness case.  This is not a case that's going to require

16  a lot of factual testimony from a dozen witnesses.  So I

17  really don't see that being the case.  This is not an ongoing

18  harm case where there's conduct that needs to stop and so I

19  don't see what the prejudice is to the plaintiff here.  I hear

20  a lot of talk about, well, what if the Second Circuit does

21  this, what if the Second Circuit does that.  Exactly.  What if

22  the Second Circuit does something that impacts this case.  The

23  prudent course here is to probably wait that out.

24         I'd also note in the Independent Energies appeal

25  which is the business line versus residential line case, while

21

1    the FCC is going to issue guidance on that issue and has urged

2    the Second Circuit to stay that appeal, the Second Circuit

3    hasn't actually stayed that appeal so the Second Circuit may

4    decide that issue before the FCC does as well.

5           So, both the Bank decision and the Independent

6    Energies decision are both on appeal.

7           THE COURT:  And you don't have an argument date in

8    the Bank case?

9           MR. FIOCCOLA:  I don't think we have an argument

10   date.  I know our opposition brief is due very early in June.

11   I think it's June 9th.  Mr. Bank, I think, is 30 or 45 days

12   after that and then argument, the argument would then be set

13   by the court, but we can apprise the Court of all of that

14   information by letter.

15          MS. BIERSTEIN:  Though I think Your Honor is aware

16   it could be months or a year before argument and similarly

17   months or a year before a decision.

18          MR. FIOCCOLA:  But I would only say that this is

19   exactly the same case challenging exactly the same phone call

20   that's at issue in that case.  So, Mr. Bank is the first filed

21   case.  He's waiting.

22          THE COURT:  He's what?

23          MR. FIOCCOLA:  He's waiting.  I mean, that's the

24   first filed case here on the same legal theory, on the same

25   phone call.  So what is the harm to Ms. Ferrenbach for waiting

22

1   when Mr. Bank is already proceeding in that regard?  He's

2   already ahead of where you're, where this plaintiff is.

3          MS. BIERSTEIN:  Well, Mr. Banks' case I said is not

4   going to be a class action and if there is a ruling from the

5   Second Circuit at some point, if we've gone ahead and briefed

6   our motion to dismiss, I think we'll be that much further

7   ahead than letting it sit for an indeterminate time in a case

8   that is very unlikely to get a full treatment or a

9   presidential opinion from the Second Circuit given the

10  treatment --

11         THE COURT:  That's why if you were really concerned

12  about it, I don't know why you wouldn't -- maybe there is no

13  basis for you to, I guess there's no basis for you to

14  intervene, but why wouldn't you file an amicus brief if you

15  think these issues aren't going to be fully developed?  That's

16  what would seem to be the wisest course.

17         MS. BIERSTEIN:  Would Mr. Fioccola consent to that?

18  I think we need the content of the parties.

19         MR. FIOCCOLA:  Well, I think I heard you say you

20  haven't even read his brief yet.  Look at his brief.  It was

21  filed.  It was filed a long time ago.  He filed it way before

22  he needed to and I think he makes a lot of the arguments.

23  Whatever you think of Mr. Bank, he --

24         THE COURT:  Well, would there be any objection to

25  their filing?

23

1      MR. FIOCCOLA:  I'd have to consult Uber.  I'm not in

2  a position --

3      THE COURT:  I don't know the rules of the Circuit.

4  Do you need permission of the parties to file?

5      MS. BIERSTEIN:  If we don't have permission, I think

6  we have to make a motion.  I know in the first instance,

7  there's -- I did look at the Circuit rule on this because of

8  concerns about this appeal and that is one of the criteria,

9  whether the party consents.  It certainly makes it easier to

10 do it if the defendant consents, otherwise, I think it's a

11 contested motion to just submit amicus.  I don't know if

12 Ms. Ferrenbach meets the requirements to be an amicus.  I

13 mean, I've looked at the procedure for doing it, but it

14 certainly is a concern to have a serial pro se litigator like

15 Mr. Bank determining the issue in the Second Circuit and it's

16 just not on a class-wide basis.

17     THE COURT:  You are stuck with that any way you look

18 at it.

19     MS. BIERSTEIN:  Not if in it's not a precedential

20 ruling.

21     THE COURT:  How do you know?  They could write an

22 opinion.

23     MS. BIERSTEIN:  They could.

24     THE COURT:  And because he didn't raise issues, you

25 could be hurt by that.  That's why I am thinking that if we

24

1   are talking about expediency here, I understand your point

2   about wanting all of the arguments to be in context before the

3   Circuit, but I would think you would at least consider, I mean

4   maybe all the parties want to consider that, whether you would

5   consent.

6           MR. FIOCCOLA:  But, Your Honor, I mean, the way this

7   usually works is she would have contacted Mr. Bank to make

8   sure he was including all the arguments.  She doesn't get an

9   opportunity to submit -- you don't have a second filed lawsuit

10  plaintiff being able to file an amicus in an appeal in support

11  of the first filed plaintiff.  Normally, counsel would work

12  together and try to do that.

13          I appreciate her arguments that Mr. Bank is a serial

14  filer, but recall that there's very little case law

15  interpreting the political exemption.  Judge Gleeson's

16  decision is now the lead case on that issue.  And as counsel

17  pointed out on the 399-p issue, also not a lot of case law on

18  that.  This is a significant decision with respect to 399-p as

19  well.  So, the likelihood of the court just summarily

20  affirming or doing something else other than write a full

21  opinion I think in this case are fairly low.

22          Lastly, the comments about Mr. Bank not being

23  adequate counsel, I appreciate counsel making those arguments

24  for us but at the appropriate time, Mr. Bank can do a few

25  things which Mr. Bank has said when similar challenges were

25

1  made against him which is, hey, I can always substitute myself

2  for another plaintiff or bring in other counsel who can

3  represent the class that a court would find adequate.  So we

4  don't have either of those things at this point.

5          MS. BIERSTEIN:  Your Honor, I don't think

6  Mr. Fioccola can have it both ways.  On the one hand, he said

7  this court should wait and let the Second Circuit rule and

8  then he turns around and says but why should we agree to let

9  this plaintiff have any say about what happens in the Second

10  Circuit, if she and Mr. Bank, if Ms. Ferrenbach and Mr. Bank

11  don't want to work together, then she just gets bound by it.

12  It looks like a little bit of game playing to me if the

13  idea --

14          MR. FIOCCOLA:  Not at all.  Those are not

15  inconsistent positions.

16          MS. BIERSTEIN:  I heard you out, Mr. Fioccola.  I

17  would appreciate it if you would extend me the same courtesy.

18          It seems to me that if we're of the view that

19  Mr. Bank's case is going to be dispositive of everybody's

20  issue, then we ought to let Ms. Ferrenbach have her say in

21  front of the Second Circuit as well if that's what Your Honor

22  seems to thinks might be more expedient, but I don't think

23  it's fair to stand on procedural niceties and say, well, too

24  bad, you were here second, you have no say in the Second

25  Circuit and your case gets stayed.  I think we ought to write

26

1   our brief somewhere.

2           MR. FIOCCOLA:  That happens all the time though.

3           THE COURT:  Well, do you have any intention of

4   seeking, apart from whether they agreed with it or not, do you

5   have any intention of trying to seek to intervene in the

6   Second Circuit case?

7           MS. BIERSTEIN:  Your Honor, I could not find a

8   mechanism for intervening.  I only found a mechanism for doing

9   an amicus.

10          THE COURT:  Do you intend to do that?

11          MS. BIERSTEIN:  If our case is stayed, absolutely, I

12  would absolutely seek to.  And if Your Honor thought even if

13  you didn't stay it, that it would be, you know, advisable in

14  terms of the Second Circuit ruling, but we absolutely would

15  intend to, to submit something to the Second Circuit to be

16  sure that the issues were properly before the court.

17          MR. FIOCCOLA:  I haven't looked into this issue,

18  Your Honor, but I'm not sure if it's appropriate for another

19  plaintiff in another case to file an amicus to support, to add

20  additional arguments that the first plaintiff didn't raise in

21  their appeal.

22          MS. BIERSTEIN:  Then we should be able to raise them

23  here, Your Honor.  If the Second Circuit isn't going to get to

24  hear them, then we shouldn't stay this case and Your Honor

25  should hear the arguments.

27

1          THE COURT:  I'll set a motion schedule here then

2    because it seems clear to me from these arguments that Uber

3    would seek to block any effort to have additional arguments

4    made before the Circuit.  I don't know where that ends up

5    taking us one way or the other, quite frankly, but it seems to

6    me that if counsel were able to get her arguments before the

7    Circuit, that would be the most advantageous thing to happen.

8          MR. FIOCCOLA:  Well, Your Honor --

9          THE COURT:  If she can't and she wants to make an

10   effort to raise these arguments here and have this court

11   decide something perhaps before the Circuit rules on it, then

12   I can understand why she might want to do that.

13         MR. FIOCCOLA:  Well, Your Honor, I haven't discussed

14   this issue with Uber.  I can't, I can't say that they would

15   have no objection to them participating in the appeal.  I can

16   certainly ask them and report back to plaintiff's counsel.

17         THE COURT:  If you can work, if you can work it out

18   that some mechanism that you wouldn't oppose -- now, that's

19   not to say the Circuit will go along with it, but a mechanism

20   that would not oppose counsel from getting her client's

21   viewpoints before the Circuit, then I think that's the

22   preferable way to go.  Otherwise, I think if she believes that

23   there are other expanded arguments that should be considered

24   and she wants this court to consider them and --

25         MR. FIOCCOLA:  But expanded arguments on our motion

28

1  to dismiss, you mean?

2          THE COURT:  No.  That she would make arguments in

3  response to your motion to dismiss that were not made before

4  the Court of Appeals.  She may very well want that decision

5  and we go from there.

6          I will give you a week to see if there is something

7  you can work out between the two of you and if you do, then I

8  will stay it.  If not, I will set a motion schedule because I

9  think she is at least entitled to make her argument somewhere.

10 It could be that if I came out a different way and the Circuit

11 had still not reached an opinion, someone can bring that

12 decision to their attention, you know, I mean a lot of

13 different things.  So I understand the argument for wanting to

14 make the arguments as soon as possible.  My only thought is it

15 is better to make them before the Circuit than to make them

16 here, but she, I think, is entitled to make them somewhere.

17         MR. FIOCCOLA:  Even on the same case, Your Honor, on

18 the same legal theories?  I mean it's the exact same phone

19 call.

20         THE COURT:  I know that but there are other

21 arguments that she may want to make with regard to 399 that

22 she says were not developed before Judge Gleeson.

23         In any event, if you work something out by the 13th

24 and you can send a joint letter to the Court, that's fine.

25 Otherwise, can you make your motion by May 30th?

29

1            MR. FIOCCOLA:  Your Honor, is it possible I have a

2     week beyond that?

3            THE COURT:  Sure.  You want May 6th?  June 6th.

4            MR. FIOCCOLA:  June 6th would be preferable, Judge.

5            THE COURT:  When can you respond, Counsel?

6            MS. BIERSTEIN:  Well, in the absence of seeing their

7     motion, I would say three weeks.

8            THE COURT:  June 27th?

9            MS. BIERSTEIN:  Yes.

10           THE COURT:  Okay.  Any reply, July 6th?

11           MR. FIOCCOLA:  Your Honor, can I ask for July 8th

12    just given that the holiday weekend --

13           THE COURT:  Gee, I thought I gave you two days to be

14    nice but if you really want it, I'll give you July 8th.  I

15    didn't make it the 5th.  I thought that was being a real

16    prince of a judge but, anyway, you can have the 8th.

17           MR. FIOCCOLA:  Thank you.

18           THE COURT:  I'll put argument on for July 29th at

19    2:00 p.m.

20           MR. FIOCCOLA:  That's fine with me, Your Honor.

21           MS. BIERSTEIN:  It looks completely clear.

22           THE COURT:  All right.  Thank you, ladies and

23    gentlemen.

24           (Matter concluded.)

25